# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ARGONAUT INSURANCE CO., | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) Case No. 05 C 0218 |
| | ) |
| | ) Judge Joan B. Gottschall |
| BROADSPIRE SERVICES, INC. | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Before this court is Argonaut Insurance Co.'s ("Argonaut") motion for a temporary restraining order ("TRO") and/or preliminary injunction against defendant Broadspire Services, Inc. ("Broadspire"). For the reasons set forth herein, the motion is denied.

## I. BACKGROUND

Argonaut, an insurance company, claims that Broadspire, an insurance claims management services provider, has breached both non-compete and exclusivity provisions of a January 23, 2003 "Renewal Rights Agreement" by continuing to provide claims management services to Argonaut's former client Rail Management Services ("Rail Management") after Rail Management began using a competing insurance company for workers' compensation coverage. Argonaut requests that the court issue a TRO and/or preliminary injunction ordering Broadspire immediately to cease providing its services to Rail Management.

## II. ANALYSIS

### 1. Standard.

A party seeking a TRO or preliminary injunction must demonstrate that (1) its case has some likelihood of succeeding on the merits; (2) there is no adequate remedy at law; and (3) it will suffer

irreparable harm if preliminary relief is denied. *Abbott Laboratories v. Mead Johnson & Co.*, 971 F.2d 6, 11-12 (7th Cir. 1992). If the moving party meets this threshold burden, the court will weigh the harm done to the non-moving party against the irreparable harm to the moving party if relief is denied. *Id.* In so doing, the court uses a "sliding scale" analysis in which "the greater the moving party's chance of success on the merits, the less strong a showing must it make that the balance of harms is in its favor; conversely, the less likely it is that the moving party will succeed on the merits, the more the balance need weigh towards its side." *Duct-O-Wire, Co. v. U.S. Crane*, 31 F.3d 506, 509 (7th Cir. 1994). The court must also considers the public interest implicated in granting or denying the injunction, including the effects of the injunction on non- parties. *Id.*

### 2. **Likelihood of Success.**

Argonaut claims that the Renewal Rights Agreement prohibits Broadspire from providing claims management services to certain customers, including Rail Management, that defect to competing insurance carriers. Argonaut's argument is based on its claim that Broadspire is a party to the Renewal Rights Agreement and is bound thereby as the successor-in-interest to an entity called NATLSCO[1].

In response, Broadspire points out that it is not a signatory to the agreement[2] and that it is not otherwise clearly defined therein as a party. To controvert this observation, Argonaut has introduced, among other evidence, email communications which it interprets as containing admissions by Broadspire that Broadspire is in fact bound by the Renewal Rights Agreement's

---

[1] The parties agree that Broadspire is NATLSCO's successor, and these names are used interchangeably for purposes of this order.

[2] The signatories to the Renewal Rights Agreement were Lumbermens Mutual Casualty Company and American Manufacturers Mutual Insurance Company (the "Seller Parties") and Argonaut.

prohibition on Broadspire's providing its services to Rail Management. Broadspire has objected to the admission of these emails, but in any event, the court concludes that they do not provide persuasive evidence that Broadspire has agreed to be bound by the Renewal Rights Agreement, but only arguably support this claim. Argonaut also offers interpretations of various other provisions of the Renewal Rights Agreement that it asserts can be read to establish Broadspire as a party, either through implication or deduction. The court does not address these arguments, other than to note that they do establish some question as to whether Broadspire is bound by the Renewal Rights Agreement.

Argonaut argues alternatively that Broadspire is bound at least to the non-competition portion of the Renewal Rights Agreement by asserting that "Section 5.9" of the Agreement obligates both the Seller Parties and their "Affiliates" not to compete with Argonaut with respect to certain insureds including Rail Management. The court rejects Argonaut's reading, noting that Affiliates (which may include Broadspire) are not expressly bound to the non-compete provisions of Section 5.9, which are found in Section 5.9(a), but are instead mentioned only in Section 5.9(b). Section 5.9(b) does not bind the Affiliates to do anything, but instead makes clear only that the Renewal Rights Agreement does not limit the rights of Affiliates to pursue certain types of business, free of non-competition obligations.

In addition, it is unlikely that Section 5.9(a) helps Argonaut even if Broadspire is bound by the Renewal Rights Agreement because Section 5.9(a) specifies only that the Seller Parties may not "solicit, quote or underwrite" insurance for certain Argonaut customers including Rail Management. Argonaut has not alleged that Broadspire has solicited, quoted or underwritten insurance to anyone, only that it has unallowably provided claims management services, precluding a successful argument

based on Section 5.9(a)'s non-compete provision.

Argonaut's stronger argument is that Section 5.14(b) applies to Broadspire. This provision states that "for a period of two (2) years from the date of this Agreement the Seller Parties shall not provide NATLSCO Claim Services" to certain insureds including Rail Management. As is clear from this language, it is the Seller Parties who are bound by this provision, implying that if Broadspire is not a Seller Party, it is free to provide such services to Rail Management. As noted above, while the court does not believe that Argonaut has demonstrated a strong probability of success on its claim that Broadspire is a Seller Party, it may be able to prove this point in a full proceeding.

The court therefore finds that, while Argonaut has not shown a robust likelihood of success on the merits of its case, it has shown a likelihood sufficient to meet the requirements for preliminary relief. *Boucher v. School Bd. Of Greenfield*, 134 F.3d 821, 824 (7th Cir. 1998) (plaintiffs need present only "better than negligible chance" of success on the merits to meet standard for grant of preliminary relief) (citations omitted).

### 3. Irreparable Harm and Adequate Remedy at Law.

Argonaut asserts that Broadspire's alleged breach has deprived Argonaut of the ability to obtain renewal of the Rail Management workers' compensation policy, and that because the effects of this loss are not quantifiable, this harm is irreparable without a grant of preliminary relief.

As a preliminary matter, the court notes that Argonaut's own evidence shows that Rail Management has actually engaged another insurance company to provide its workers' compensation policy. Argonaut has already lost this business, including the immediately ascertainable loss of Rail Management's approximately $7.4 million annual premium. Further, Argonaut has failed to show

that it would likely have been able to obtain a renewal from Rail Management even in the absence of any breach by Broadspire; its argument is based on its belief that even if Rail Management wanted to change insurers, it would likely not have done so if it could not have retained Broadspire as its claims manager. The fact is that a large part of the harm, from which all other harms alleged by Argonaut would flow, has already happened, and it is beyond the court's power to remedy this harm with injunctive relief - the court cannot order Rail Management, a non-party to this case, to drop its current insurer and renew its former policy with Argonaut.[3]

Aside from the immediate harm of losing Rail Management's business, Argonaut maintains that the harms flowing from Broadspire's alleged breach are not remediable by damages because the loss of Rail Management's business will result in hard-to-quantify future lost business, as well as reputational harm. The cases cited by Argonaut in support of this proposition are generally inapposite, each involving the almost certain loss of a significant future customer base, or involving a likelihood that the moving party would be driven to the brink of insolvency absent an injunction. See, e.g., Walgreen Co. v. Sara Creek Property Co., 966 F.2d 273 (7th Cir. 1992); U-Haul Co. v. Hindahl, 413 N.E.2d 187 (Ill. App. Ct. 1980). Beyond general assertions related to the potential impact of losing Rail Management's business, Argonaut did not offer significant evidence showing that this loss will likely result in the defection of a significant number of additional customers. What is clear is that this case involves Argonaut's loss of a single account, and while Rail Management is a significant customer, Argonaut has not asserted that the loss of the Rail Management policy will

---

[3] The court also notes that even if Argonaut were able to prove the applicability of Section 5.14(b)'s two year prohibition on Broadspire servicing competing policies, that two year period runs out on January 23, 2005. Evidence shows that it is likely that Rail Management jumped insurers at the earliest in December, 2004, significantly limiting the power of preliminary relief to remedy Argonaut's claimed harms.

by itself drive Argonaut to the brink of insolvency.

In sum, the primary harm (losing Rail Management) is already done, and Argonaut's other claimed harms are too speculative to support entry of an injunction at the TRO stage.[4] *Deerbrook State Bank v. Conover*, 568 F. Supp. 696, 700 (N.D. Ill. 1983) (citing cases). Based on the evidence before the court, most of the harm flowing from Broadspire's alleged breach would be quantifiable and thus remediable by an award of damages.

For these reasons, the court finds that Argonaut has failed to make a showing of significant irreparable harm for which there is no adequate remedy at law. Argonaut has shown some likelihood of success on the merits, raising suspicion that Broadspire may be bound by the Renewal Rights Agreement, but the evidence for this was hardly conclusive. The court notes in addition the substantial harm to a third party, Rail Management, that would likely result from the injunction Argonaut seeks and the inability of an injunction to address most of Argonaut's harm. Argonaut's motion for preliminary relief is therefore denied.

### III. CONCLUSION

For the foregoing reasons, Argonaut's motion for a temporary restraining order is denied.

ENTER:

JOAN B. GOTTSCHALL
United States District Judge

DATED: January 21, 2005

---

[4] Argonaut also contends that the parties have stipulated to a remedy of specific enforcement. This stipulation (found in Section 5.9(c) of the Renewal Rights Agreement), applies only to alleged breaches of Section 5.9(a), which is not an argument likely to succeed as described above.