IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ARGONAUT INSURANCE CO., )
)
Plaintiff, )
)
vs. ) No. 05 C 218
)
BROADSPIRE SERVICES, INC., )
)
Defendants. )

## MEMORANDUM OPINION AND ORDER

Plaintiff, an insurance company, provided workers' compensation coverage to Rail Management Services (RMS) until the end of 2004. Defendant provided claim management services for that coverage. RMS then switched to a different carrier, but defendant continued to provide the claim management services. That, according to plaintiff, is in breach of its non-compete and exclusivity obligations to plaintiff under a Renewal Rights Agreement, and it sues for redress.

On January 23, 2003, two insurance companies, whom we will refer to as the Kemper companies, entered into the Renewal Rights Agreement with plaintiff. The Kemper companies sold various rights to write, novate and/or renew insurance contracts, which included the RMS coverage. Not surprisingly, the sellers agreed not to compete with plaintiff in getting the business and agreed, indeed, to help plaintiff get it. At the time, the organization providing claims management services was NATLSCO, Inc. NATLSCO was not a party to the Renewal Rights Agreement (the sellers were the two insurance companies and certain insurer subsidiaries), but it was part of the package. It was owned and controlled by the Kemper companies and was, for the purposes of the Renewal Rights Agreement, an affiliate of the

sellers, and the parties agreed to execute, or cause their affiliate to execute, the Argonaut Services Agreement. They did so, also on January 23, 2003, in an agreement executed by Argonaut and NATLSCO. That obligated NATLSCO to provide claim management services to Argonaut for renewed policies, although it could also provide similar services to others.

Pursuant to Section 5.9 of the Renewal Rights Agreement the Kemper companies and their insurer subsidiaries agree not to compete for the renewal business for five years. The agreement also, in Section 5.4, obligated NATLSCO to provide claims management services for two years. That section also provides that "the Seller Parties shall not provide NATLSCO Claims Services" for two years to any of the insureds for which the rights to renew or novate had been transferred.

According to the complaint (par. 16), NATLSCO merged into or was acquired by Platinum Equity LLC in mid- to late 2003 and changed its name to Broadspire. Defendant represents that it was a subsidiary of Lumbermens, one of the two Kemper companies; that Lumbermens sold NATLSCO to Tornado Acquisition, Inc., a subsidiary of Platinum Equity, LLC, on July 22, 2003; and that NATLSCO changed its name to Broadspire Services, Inc. That representation is consistent with the allegations of par. 16.

There is no question that NATLSCO agreed to provide claims management services to plaintiff on renewed policies, and that obligation continued after the sale to Platinum Equities, LLC. Indeed, if it had reneged on that obligation, the Kemper companies would be legally vulnerable. *See* Sections 2.6 and 3.2 of the Renewal Rights Agreement. But that is not the dispute. Plaintiff claims that Broadspire, as NATLSCO, was a Kemper seller, bound by the non-compete provisions of the Renewal Rights Agreement. But NATLSCO was not a contracting party to that agreement, and it did not solicit, guide or underwrite insurance for

anyone. It was, however, then an affiliate of the contracting Kemper companies, subject to their control. They could not permit NATLSCO to provide services to insureds who had failed to renew with plaintiff and had gone with another carrier.

But sometime in 2003 NATLSCO, now Broadspire, ceased to be an affiliate. The Kemper companies no longer controlled it, and they were no longer in a position not to provide NATLSCO services to others.

Plaintiff points to a couple of e.mails in September 2004, in which defendant does make reference to a non-compete agreement, although somewhat ambiguously ("'in the spirit of the agreement'"). At that time defendant was apparently engaged with plaintiff in a joint effort to obtain novations or renewals, and the e.mails are consistent with that posture. In any event, those e.mails cannot supplant the careful and detailed provisions of both the Renewed Rights Agreement and the Service Agreement, and those agreements do not provide a basis for plaintiffs claims. The motion to dismiss is granted.

JAMES B. MORAN
Senior Judge, U. S. District Court

April 26, 2005.