IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ARGONAUT INSURANCE CO., )
)
Plaintiff, )
)
vs. ) No. 05 C 218
)
BROADSPIRE SERVICES, INC., et al., )
)
Defendants. )

## MEMORANDUM OPINION AND ORDER

Defendants American Manufacturer's Mutual Insurance Company, Lumbermen's Mutual Casualty Company (together, "Kemper Companies"), and Broadspire Services, Inc. ("Broadspire"), move to dismiss the second amendment complaint of plaintiff Argonaut Insurance Company ("Argonaut"). Defendants' motions to dismiss are denied for the reasons stated below.

## BACKGROUND

The following facts are taken from plaintiff's second amended complaint. On January 23, 2003, Argonaut and the Kemper Companies executed a contract (hereinafter "Renewal Agreement") in which Argonaut purchased the renewal rights to certain insurance contracts from the Kemper Companies. At the time the Renewal Agreement was signed, defendant Broadspire was a subsidiary of one of the Kemper Companies and was named NATLSCO.

NATLSCO was not a signatory to the Renewal Agreement, but Section 5.14 of the Renewal Agreement obligated NATLSCO to provide claims services to the transferred insurance contracts for Argonaut. It also required that the Kemper Companies not "provide NATLSCO Claim Services" to Argonaut clients that switched their coverage to competing carriers.

Section 5.14(b) reads as follows:

> (b) Except where required by law or contract in force on or before the execution of this Agreement, for a period of two (2) years from the date of this Agreement the Seller Parties shall not provide NATLSCO Claim Services or NATLSCO Engineering Services to any of the Insureds whose insurance contracts are not within, renewed or novated to Purchaser for whatever reason.

Argonaut and NATLSCO entered into a separate agreement (hereinafter the "Services Agreement") that defined NATLSCO's obligations in connection with providing claim services to the transferred insurance contracts for Argonaut. The Services Agreement was expressly referred to in the Renewal Agreement.

In July 2003, the Kemper Companies sold NATLSCO to another company who changed NATLSCO's name to Broadspire. Plaintiff contends that Broadspire and Argonaut continued to perform the obligations set forth in the Services Agreement. The Renewal Agreement also remained unchanged. In December 2004, one of Argonaut's clients chose not to renew its contract and instead contracted with a rival company. Argonaut believed that Broadspire would honor the agreements and refuse to provide claims management services to the client, but this was not the case and Broadspire refused to discontinue claims management services.

An assignment clause in the Renewal Agreement provided that an "assigning party shall remain liable for all of its obligations" under the agreement. That section states:

> This Agreement may be assigned by any party herein, provided, however, that, notwithstanding such assignment, the assigning party shall remain liable for all of its obligation hereunder. This Agreement and the ancillary Agreements shall apply to, and inure to the benefit of and be binding upon and enforceable against, each party hereto and its successors and permitted assigns.

Argonaut turned to the Kemper Companies for assistance in obtaining Broadspire's compliance, but the Kemper Companies refused.

Plaintiff next attempted to obtain a temporary restraining order against Broadspire in

January 2005, which was denied. 2005 U.S. Dist. LEXIS 8278. Plaintiff then brought suit against Broadspire for breach of the Renewal Agreement. This court granted Broadspire's motion to dismiss in April 2005 (2005 U.S. Dist. LEXIS 8241). Argonaut appealed and the Seventh Circuit reversed and remanded, stating:

> [Argonaut] has alleged that NATLSCO was bound by the initial agreement, and neither the complaint nor the attached contract are clear on their face as to whether NATLSCO was bound. Discovery might reveal that its parent had the power to bind it in just such a way. Moreover, Argonaut has alleged facts regarding NATLSCO's behavior post-contract and Broadspire's behavior post-acquisition, and Argonaut claims that this behavior evinces either an original intent to be bound or an adoption of the contract. Finally, Argonaut alleges that any obligations of NATLSCO or its parent were assigned to Broadspire. Discovery might bear out facts that would allow recovery on any of these theories.... Argonaut is at least entitled to discovery on its allegations.

209 Fed. Appx. 573, 575–76 (7th Cir. 2006). Plaintiff subsequently filed a first and then a second amended complaint. The second amended complaint added the Kemper Companies as defendants. Count I of the complaint alleges breach of contract, Count II alleges unjust enrichment of the defendants, and Count III alleges that the defendants are liable under a promissory estoppel theory.

## ANALYSIS

The court has jurisdiction over the subject matter of this action under 28 U.S.C. §1332 because there is diversity of citizenship among the parties and the amount in controversy exceeds $75,000. In a diversity case, federal courts apply federal procedural law and state substantive law. Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938). The parties have agreed in the Renewal Agreement (§8.6) and the Services Agreement (§32) that Illinois substantive law will govern their agreement. Generally, we honor choice-of-law provisions agreed to by the parties to a contract. Tomic v. Catholic Diocese of Peoria, 442 F.3d 1036, 1042 (7th Cir. 2006).

When deciding a motion to dismiss, we take as true all well-pleaded factual allegations

in the complaint and make all plausible inferences from those allegations in plaintiff's favor. Levy v. Pappas, 510 F.3d 755, 764 (7th Cir. 2007). Federal notice pleading requirements under Federal Rule of Civil Procedure 8(a)(2) are met as long as a complaint (1) gives defendant fair notice of the claims and the grounds upon which it rests, and (2) plausibly suggests that plaintiff has more than a speculative right to relief. EEOC v. Concentra Health Servs., 496 F.3d 773, 776 (7th Cir. 2007) (*quoting* Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964 (2007)).

Count I – Breach of Contract

We first address defendants' motion to dismiss Count I, the breach of contract claim. For a plaintiff to show a breach of contract under Illinois law, four separate elements are required: (1) an existing contract between plaintiff and defendant; (2) plaintiff performed his obligations under the contract; (3) defendant did not perform his obligations under the contract; and (4) plaintiff has incurred damages as a result of the breach. Berry v. Oak Park Hosp., 256 Ill. App. 3d 11, 19 (Ill. App. Ct. 1993).

As to the first factor, plaintiff alleges the Renewal Agreement and the Services Agreement are "valid and binding contracts setting forth the respective obligations by and among Argonaut and the Defendants" (cplt. p.35). Plaintiff also alleges that it materially performed its obligations under the "parties' Agreements," defendants did not perform their obligations under the agreements, and plaintiff incurred damages as a result of the defendants' breach (cplt. pp.38–40).

Broadspire argues that since it is unambiguously absent from the signatory parties to the Renewal Agreement, it cannot be liable for breach of contract. For its part, Kemper Companies argue their actions have not been inconsistent with the plain language of §5.14(b) of the Renewal Agreement, so the breach of contract claim against them should be dismissed.

Both are correct in that meanings of contractual terms are a matter of law and any unambiguous contract terms control over contrary allegations in plaintiff's complaint. McWane, Inc. v. Crow Chicago Indus., 224 F.3d 582, 584 (7th Cir. 2000). But, this is not such a case. The Seventh Circuit has determined that "neither the complaint nor the attached contract are clear on their face as to whether NATLSCO was bound." 209 Fed. Appx. at 574. An ambiguity in the relevant language of a contract creates a question of fact and makes dismissal of the complaint inappropriate. Echo, Inc. v. Whitson Co., 121 F.3d 1099, 1104 (7th Cir. 1997).

Broadspire argues that Twombly affects the Seventh Circuit's reversal and remand in this case. However, Twombly did not affect the determination of whether a contract term is ambiguous as a matter of law. Furthermore, we have used a post-Twombly motion to dismiss standard here and find plaintiff's complaint adequately pleaded. It gives fair notice to defendants of the breach of contract claim and the grounds upon which it rests, because it articulates the actions of defendants that are at issue and the provisions of the contract plaintiff believes were breached. All four elements required for a breach of contract claim under Illinois law are properly set forth in the complaint and are uncontradicted by the clear meaning of the contract, so the complaint plausibly suggests that plaintiff has more than a speculative right to relief for defendants' breach.

Count II – Unjust Enrichment

Counts II and III are equitable claims, pleaded in the alternative to the breach of contract theory in Count I, an action permissible under Rule 8(d)(2). A party is allowed to plead a breach of contract, or if the court finds no enforceable contract to plead for quasi-contractual relief in the alternative. Cromeens, Holloman, Siber, Inc. v. AB Volvo, 349 F.3d 376, 397 (7th Cir. 2003). "If a party makes alternative statements, the pleading is sufficient

if any one of them is sufficient," so we will evaluate independently each count pleaded in the alternative.

An unjust enrichment claim under Illinois law requires a plaintiff to allege that defendant has unjustly retained a benefit to plaintiff's detriment and that defendant's retention of the benefit violates the "fundamental principles of justice, equity, and good conscience." HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc., 545 N.E.2d 672, 678 (Ill. 1989). In Count II, plaintiff alleges defendants received consideration from plaintiff under the Renewal Agreement in greater amounts than would have been paid if plaintiff knew that Broadspire would not be its exclusive claims management servicing agent on the transferred accounts (cplt. p.42). Plaintiff also alleges that defendants' retention of these benefits is improper and unjust (cplt. p.43). We find plaintiff's unjust enrichment claim sufficiently pleaded.

Defendants argue quasi-contractual relief is only available where there is no express contract between the parties. Cromeens, Holloman, Siber, Inc. v. AB Volvo, 349 F.3d 376, 397 (7th Cir. 2003). This is true where the contractual provision in question is unambiguous. *Id.* However, since the contractual provisions in question here have already been held ambiguous as a matter of law, and the alternate count expressly assumes there is no contractual obligation, it is inappropriate to dismiss the quasi-contractual counts at this stage. *Id.* An unjust enrichment claim is only barred if it is based on the same promise and seeks the same relief as an otherwise barred contract claim. Abrams v. Unity Mut. Life Ins. Co., 237 F.3d 862, 864 (7th Cir. 2001). Therefore, the precise meaning of the contractual terms, a question of fact for this ambiguous contract, will need to be determined before a comparison to the quasi-contractual claims can be made.

Count III – <u>Promissory Estoppel</u>

The elements required for a promissory estoppel claim under Illinois law are (1) defendants made an unambiguous promise to plaintiff; (2) plaintiff relied on this promise; (3) plaintiff's reliance was expected and foreseeable by defendants; and (4) plaintiff relied to his detriment. <u>Robinson v. BDO Seidman, LLP</u>, 854 N.E.2d 767, 773 (Ill. App. 1st Dist. 2006).

As to the first element, plaintiff has alleged Broadspire promised to honor the terms of the Renewal Agreement and the Kemper Companies promised to compel NATLSCO's performance of §5.14 of the Renewal Agreement (cplt. p.45). Plaintiff also alleges that it relied, to its detriment, on defendants' promises, satisfying the second and fourth elements for this claim (cplt. p.46).

As to the third element, taking all inferences in favor of plaintiff, it can be inferred that defendants expected plaintiff to rely on their promises. Broadspire contacted Argonaut in June 2004 to ask whether it could be "released from its non-compete obligation" for a specific customer that had "dropped its policy with Argonaut" (cplt. p.21). A few months later, Broadspire e.mailed Argonaut about a customer that had moved their coverage away from Argonaut, but wanted to continue using Broadspire for claims management (cplt. p.22). The next day, Broadspire e.mailed Argonaut to verify that it planned to terminate claims services to the customer that had switched to the rival carrier because the non-compete obligation "is what Kemper agreed to do and BSI has agreed to honor" it (cplt. p.23). On more than one occasion Broadspire communicated to Argonaut its willingness to comply with the non-compete obligation. It can be inferred that Broadspire's intent was to reassure Argonaut of its compliance, which Broadspire knew was a key negotiation point between Argonaut and the customers it obtained from the Kemper Companies. Therefore, we hold plaintiff has properly alleged a claim for promissory estoppel.

## CONCLUSION

For the foregoing reasons, defendants' motions to dismiss are denied.

JAMES B. MORAN
Senior Judge, U. S. District Court

March 25, 2008.